GARRISON, Judge.
Plaintiff in the case at hand, Simonne Crawford, was admitted to Touro Infirmary in New Orleans, on September 25, 1984 under the care of Dr. Applebaum. On February 26, the plaintiff underwent a cervical myelogram and a CAT scan. She was discharged from Touro on March 1, 1985.
In connection with the aforementioned hospitalization and the procedures, Ms. Crawford filed suit against Touro Infirmary and the doctor who performed the mye-logram, Robert Morales, M.D. The plaintiff alleges that Touro Infirmary was negligent in failing to adequately inform her about the procedures performed and the possible resultant consequences and failure to provide adequate nursing care. Plaintiff filed her medical malpractice complaint with the Commissioner of Insurance on March 7, 1986.
Touro Infirmary filed an Exception of Prescription as to the plaintiff's claims of inadequate nursing care and failure to adequately inform. The trial court granted defendant’s exception, dismissing plaintiff’s claims against Touro based upon alleged inadequate nursing care and lack of informed consent, with prejudice.
As to prescription, LSA-R.S. 9:5628 states in pertinent part as follows:
A. No action for damages for injury or death against any physician, chiropractor, dentist, or hospital duly licensed under the laws of this state, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year of the date of the alleged act, omission or neglect, or within one year from the date of the discovery of the alleged, act, omission or neglect; provided, however, that even as to claims filed within one year from the date of such discovery, in all events such claims must be filed at the latest within a period of three years from the date of alleged act, omission or neglect.
B. The provisions of this section shall apply to all persons, whether or not infirm or under disability of any kind, including minors and interdicts.
As the plaintiff was discharged from the hospital on March 1, 1985, her claims against Touro were clearly not within one year of the disputed conduct. Thus, the issue is one of plaintiff’s “discovery” of her injuries.
A prescriptive statute is subject to the rule of contra non valentum which serves to suspend the running of prescription where the cause of action is not known or reasonably knowable to a plaintiff. Griffin v. Kinberger, 507 So.2d 821 (La.1987). The Supreme Court in Griffin, supra, further stated that the one year prescriptive period begins to run on the date that the injured party discovered or should *429 have discovered the facts upon which his or her cause of action rests. Prescription will not run against a plaintiff who is ignorant of the facts upon which his cause of action rests where such ignorance is not willful, negligent, or unreasonable. Griffin, supra; Jordan v. Employee Transfer Corp., 509 So.2d 420 (La.1987). We believe it is reasonable to conclude that the plaintiff had sufficient knowledge by March 1, 1985, at the latest, to commence the running of prescription against Touro for the aforementioned claims.
Mrs. Crawford’s deposition testimony supports the trial court’s finding that she had knowledge of any flaws in obtaining her informed consent to the procedures at the time she signed such forms. According to Ms. Crawford, while she was in her room waiting for the myelogram procedure to begin, Dr. Morales came into the room and asked if she had signed the paper. After she had informed Dr. Morales she had not signed, an unidentified assistant of Dr. Morales came over with a clipboard and a paper and Ms. Crawford allegedly told him she could not read the paper because she did not have her glasses. Thereafter, the paper was read to Ms. Crawford by the assistant in the room.
Ms. Crawford recalls the form saying that she could have become a quadriplegic or she could die. Thereafter, Mrs. Crawford signed the form.
Based upon the above noted deposition testimony there is no question that, prior to the myelogram being performed on Ms. Crawford, she knew that a needle was going to be inserted into her back and that dye was going to be injected and she knew that as a result of this procedure she could become a quadriplegic or possibly die based upon the information allegedly read to her as opposed to her reading it herself. Any question as to the propriety of this procedure for obtaining consent, i.e. having the form read to Ms. Crawford as opposed to having her read it herself, arose at the very time of the procedure itself. Ms. Crawford knew at that time that she was signing a form which had been read to her without the benefit of her reading it herself. This fact situation was known to her as it occurred on February 26, 1985. Therefore, the filing of the claim on March 7, 1986 raising allegations of lack of informed consent is untimely.
Ms. Crawford alleges she suffered certain complications as a result of the myelo-gram procedure which were contributed to and/or virtually ignored by hospital personnel. These allegations are based upon alleged inadequate or inappropriate nursing care. According to Ms. Crawford, as a result of the myelogram she bacame very sick, dizzy and nauseated. She recalls lying in a hallway while vomiting and urinating on herself with no one around to help her except her son. Additionally, Ms. Crawford makes various charges about being ignored by nursing personnel after being returned to her room. We again believe that any inadequacy in nursing care was known to the plaintiff at the time it occurred or, at the latest, upon discharge on March 1, 1985.
Plaintiff’s deposition testimony reveals that she felt the nursing care to be inadequate while she remained at the hospital. She states that a woman representing Touro apologized to her for the poor nursing care. Sharon Hess, plaintiff’s daughter testified that her mother was dissatisfied with the nursing care she had received the day after the myelogram was performed. Furthermore, she testified that she and her brother had attempted to have plaintiff removed from Touro on February 27, a day after the myelogram was performed. Thus, this claim.is untimely.
Plaintiff argues that the granting of the defendant’s exception of prescription was improper as the issues of improper nursing care and informed consent are “completely interwoven” with the alleged malpractice concerning the myelogram procedure. It is our opinion that this argument is without merit and the trial court was correct in its conclusion.
It is clear that the doctor who performed the myelogram on plaintiff was not an employee of the hospital nor did Touro Infirmary personnel participate in any way in *430 the execution of such procedure. The alleged inadequacies of nursing care and informed consent are not inextricably tied to the myelogram itself. The facts which form the basis for Ms. Crawford’s cause of action against Touro for lack of informed consent and inadequate nursing care were knowable and, it appears, in fact known to her on or before March 1, 1985. As plaintiff first filed her claim on March 7 of 1986, prescription has run.
AFFIRMED.